Case 4:20-cv-01429   Document 28   Filed on 08/30/21 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
August 30, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CRAIG STEVEN ANDREWS, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-20-1429 |
| § | |
| KILOLO KIJAKAZI, ACTING § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 14) and Brief in Support (Document No. 15), and Plaintiff's Cross Motion for Summary Judgment (Document No. 16) and Memorandum in Support (Document No. 17). Having considered the cross motions for summary judgement, the parties' briefing, the administrative record, the written decision of the Administrative Law Judge ("ALJ"), and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

I.   **Introduction**

Plaintiff Craig Steven Andrews ("Andrews") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. §405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act 42 U.S.C. § 1382. Andrews argues 3 points of error: (1) that the ALJ erroneously found that Plaintiff

acquired transferrable skills from his past relevant work in the absence of vocational testimony describing any such skills; (2) that the ALJ failed to articulate the persuasiveness of the opinion of the SSA's examining psychologist pursuant to the requirements of 20 C.F.R. Section 404.1520c; (3) that the ALJ excluded limitations related to Plaintiff's ability to adapt and manage, limitations supported by the ALJ's own findings as well as the opinions of the consultative examiner and Plaintiff's treating physician. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, and that the decision comports with applicable law.

## II.  Administrative Proceedings

On or about January 23, 2018, Andrews applied for Title II and Title XVI disability benefits, claiming that he was disabled since March 30, 2017, due to degenerative disc disease of the lumbar spine, major depressive disorder, and generalized anxiety disorder. (Dkt. 17 at 1.) Andrews' applications were denied at the initial and reconsideration stages, after which Andrews requested a hearing before an Administrative Law Judge ("ALJ"). On April 30, 2019, a hearing was held before an ALJ, David J. Hebert, at which plaintiff's claims were considered *de novo* (Tr. 33-90). On July 29, 2019, the ALJ issued his decision finding Andrews not disabled (Tr. 10-22).

Andrews sought review of the unfavorable decision with the Appeals Council. The Appeals Council will grant a request for review of an ALJ's decision if: (1) the ALJ appears to have abused his or her discretion; (2) there is an error of law; (3) the decision is not supported by substantial evidence; (4) there is a broad policy or procedural issue that may affect the public interest; (5) new and material evidence is received and the decision is contrary to the weight of all the evidence now in the record. 20 C.F.R. § 416.1470. On February 14, 2020, the Appeals Council found no basis for review, and the ALJ's decision became final (Tr. 1-3).

Andrews filed a timely appeal of the ALJ's decision. 42 U.S.C § 405(g). The parties have filed cross motions for summary judgment (Document Nos. 14 & 16). This appeal is now ripe for ruling.

### III.        Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact

to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

### IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner: he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work. 42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)). The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;
2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 61 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, the ALJ found at step one that Andrews had not engaged in substantial gainful activity since March 30, 2017, his alleged onset date. At step two, the ALJ determined that Andrews had the following severe impairments: degenerative disc disease of the lumbar spine, major depressive disorder, and generalized anxiety disorder. At step three, the ALJ determined that Andrews did not have an impairment or a combination of impairments that met or equaled a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. Prior to consideration of steps four and five, the ALJ determined that Andrews had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to occasionally climbing ramps and stairs; never climbing ropes, ladders, or scaffolds; occasionally balancing; understanding, remembering, and carrying out detailed but not complex tasks; not working at a

forced pace or in assembly line production rate pace jobs; and, only occasional interaction with the general public." Using that residual functional capacity assessment, the ALJ concluded, at step four, that Andrews could not perform his past relevant work as a forklift operator, personal care aide, or air-conditioning unit assembler. At step five, using that same residual functional capacity assessment, and relying on the testimony of a vocational expert, the ALJ determined that Andrews could perform jobs such as companion, blind aid, and a playroom attendant, and that he was, therefore, not disabled. In this appeal, Andrews maintains that the ALJ erred by failing to articulate the persuasiveness of the opinion of SSA's examining psychologist, erred in the RFC determination, and erred in finding transferrable skills from his past relevant work in the absence of vocational testimony describing any such skills. Having considered ALJ's decision alongside the medical evidence in the record, the Court concludes that there was no need for an explicit statement of persuasiveness regarding the SSA's examining psychologist's opinion, that the ALJ's RFC determination is supported by substantial evidence, and the ALJ's finding of transferable attendant skills was based on the testimony of the Vocational Expert.

## V. Discussion

Andrews' first claim is related to the ALJ's consideration of the Medical Vocational testimony. His second and third claims relate primarily to the ALJ's RFC determination. As the ALJ's RFC determination preceded the ALJ's consideration of the Medical Vocational testimony at step five, Andrews' second and third claims will be addressed first.

Andrews maintains the ALJ erred by "failing to articulate the persuasiveness of the opinion of SSA's examining psychologist, [Dr. McClendon], pursuant to the requirements of 20 C.F.R. Section 404.1520c." (Dkt. 17.) He asserts that the ALJ's blanket statement does not meet the source-level requirements outlined in the statute, and that the failure to adopt McClendon's

6

assessed limitation of 1-2 step instructions in the RFC constitutes harmful error because it would limit the Plaintiff to unskilled jobs only and require a finding that the Plaintiff is "disabled" (Dkt. 17 at 6.) Because the Court concludes that the ALJ clearly considered Dr. McClendon's assessment in conjunction with the other medical evidence on the record in his valid calculation of Andrews' RFC, the failure to articulate the opinion's persuasiveness is not outcome-determinative, and not harmful error.

There's no real dispute that the ALJ considered Dr. McClendon's statement; the dispute is instead about how the ALJ considered it. Andrews' argument is a technical one that faults the ALJ's perceived failure to formally evaluate the consistency and supportability of the statement. That said, Andrews acknowledges that the ALJ took into account the persuasiveness factors required by 20 C.F.R. Section 404.1520c in reference to Dr. McClendon's opinion, albeit without necessarily discussing them in conjunction with the opinion itself.[1]

There is substantial medical evidence to support the ALJ's determination that Andrews has the residual functional capacity to perform light work except he is limited to carrying out detailed but not complex tasks. In determining Andrews' mental RFC, the ALJ considered Dr. McClendon's functional capacity assessment, a physical examination done by the Legacy Community Health Center, and Andrews' own subjective symptom report at the Fort Bend Family

---

[1] In his decision, the ALJ states "As for the medical opinions and prior administrative medical findings. The undersigned has not deferred or given any specific evidentiary weight, including controlling weight, to any prior administrative medical finding or medical opinion, including those from the medical sources in this case (Exhibits 5A, 6A, 3F, 4F, 9F, 10F, and 11F. pages 24-27 and 32-36). The undersigned has fully considered the medical opinions and prior administrative medical findings in this case by evaluating the supportability, consistency, treating relationship, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding such as familiarity with the other evidence in this case or understanding of the rules and regulations promulgated by the Commissioner (20 CFR 404.1520c and 416.920c)." (Tr. 20.)

Health Center. On December 4, 2017, Andrews underwent a checkup at Legacy Community Health Center (Tr. 463). Although the records indicate Andrews was complaining of symptoms of depression and anxiety, a mental status examination revealed intact judgment and insight, as well as intact memory for recent and remote events (Tr. 460). On August 3, 2018, Andrews was seen by Dr. David McClendon for a consultative Mental Status Examination (Tr. 444). From that exam, Dr. McClendon opined that Andrews "has the ability to understand, carry out, and remember instructions one-two step instructions but not for complex instructions" (Tr. 449). Finally, on March 3, 2019, Andrews was seen at the Fort Bend Family Health Center. (Tr. 1082). There, Andrews scored an 18 on the Psychometric Depression scale, and a 13 on the GAD7 test (Tr. 1083). However, during that visit, Andrews himself reported he was feeling a lot better, was feeling more motivated and had fewer overall mood changes, and while he reported that some crying spells and some feelings of depression remain, he was overall happy with the improvement. (Tr. 1083.)

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work." *Fontenot v. Colvin*, 661 Fed. Appx 274, 277 (5th Cir. 2016)(quoting *Taylor*, 706 F.3d at 603)). As such "the ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Aleman v. Saul*, 2021 WL 966075 (S.D.Tex., 2021). In this case, the ALJ clearly weighed Dr. McClendon's opinion with physical medical evidence and subjective reports of improvement to determine that Andrews had the RFC to perform a limited range of light work except that which entailed carrying out detailed, but not complex, tasks. The purely technical error at issue, assuming for argument's sake an error is presented here, is insufficient to warrant reversal in these circumstance because, as already mentioned, no different outcome could have resulted had the ALJ articulated the persuasiveness of Dr. McClendon's opinion. *See Myers v. Kijakazi, 2021 WL*

*3012838 (W.D.Tex., 2021)* (holding that the failure to articulate the persuasiveness of a medical opinion is not harmful error); *See Also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."). The ALJ's opinion makes it clear that it was Andrews' improvement in his mental status and mood which drove the ALJ's consideration of Dr. McClendon's antecedent opinion, and the RFC determination. Because "remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error," Andrews' second claim fails, as the ALJ would likely calculate the same RFC, and explain that while Dr. McClendon's opinion was semi-persuasive, other sources suggest improvement. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

Andrews further argues that the ALJ "erred by excluding limitations related to Plaintiff's ability to adapt and manage, limitations supported by the ALJ's own findings as well as the opinions of the consultative examiner, [Dr. McClendon], and Plaintiff's treating physician, [Dr. Eshareturi]." (Dkt. 17 at 8.) Andrews asserts that the ALJ's RFC determination is inaccurate and/or incomplete because it failed to account for all the individual impairments and limitations proven therein, rendering the step 5 denial defective as a matter of law. *Id.* However, the ALJ did consider the evidence provided by both medical sources regarding Andrews' ability to adapt and manage, and accurately calculated Andrews' RFC based on substantial evidence. The ALJ validly found Dr. Eshareturi's opinion unpersuasive and, as such, did not have to include Dr. Eshareturi's findings in the RFC determination.

Moreover, substantial medical evidence supports the ALJ's finding that Andrews has a moderate limitation to adapt and manage his emotions and, consequently, an RFC that is limited

to only occasional interaction with the public. The medical evidence with regards to Andrews' ability to adapt and manage his emotions reflects moderate but not extreme issues in this area. On November 3, 2017, Andrews visited Legacy Community Health Clinic and his physical examination noted he was depressed tearful and crying during assessment. There was no anxiety or agitation. (Tr. 482). On December 4, 2017, Andrews returned to Legacy Community Health Clinic complaining of symptoms of anxiety and depression (Tr. 463). During the mental status examination, Andrews displayed a flat, depressed affect, slight anxiety, and no agitation. (Tr. 470). Andrews was taken to LBJ Hospital on August 3, 2018 and treated for dehydration. At that time, Andrews had a normal mood and affect. (Tr. 493). Finally, during a checkup at Fort Bend Family Health Center on March 21, 2019, Andrews reported experiencing an upbeat mood three days out of the week (Tr. 1083).

RFC is the most the claimant can still do despite her impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC determination is "the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). "It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work." *Fontenot v. Colvin*, 661 Fed. Appx 274, 277 (5th Cir. 2016)(quoting *Taylor*, 706 F.3d at 603)). As such "the ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Id.* In this case, the ALJ clearly considered all of the evidence related to Andrews' ability to adapt and manage, and weighed the evidence accordingly to determine his RFC, limiting Andrews to only occasional interaction with the public.

Plaintiff also argues the ALJ failed to provide adequate rationale for finding Dr. Eshareturi's opinion unpersuasive. (Dkt. 17 at 11.) On April 10, 2019 Dr. Eshareturi opined,

10

among other things, (i) that Andrews' ability to adapt and manage himself is extremely limited; (ii) that he is unable to regulate his depressive emotions; (iii) that he is not able to work appropriately with the public or coworkers; (iv) that he is able to work sometimes, but not consistently with supervisors; and (v) that he will need limited social interaction, and an encouraging positive reinforcement environment. (Tr. 1072-1074). However, the ALJ found this opinion "not persuasive," reasoning:

> This treating physician is from the same health center where the claimant has been reporting medical improvement which is inconsistent from this treating source opinion. Furthermore, the treating physician has not provided clinical information or specific observation and finding that would support his conclusion and limitations involving the claimant's mental capacity thus rendering this opinion as not persuasive. It is also noted this opinion occurs three times in the medical evidence and is printed on a form provided by Citizens Disability but is dated only once with the other two left blank in the date field. (Tr. 19).

According to 20 CFR Section 404.1520(b)(2), "the factors of supportability and consistency are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." The ALJ addresses both factors in the paragraph above.

The ALJ found Dr. Eshareturi's opinion not supportable by noting that the treating physician had not provided clinical information or specific observation and finding that would support his conclusion. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion, the more persuasive the medical opinion is" (20 CFR Section 404.1520(c)(1). The record also indicates that Dr. Eshareturi only provided one comment to support his conclusions, asserting that "patient is unable

to have a conversation without crying, poor eye contact, lack of motivation, PHQ score in 1/2019 of 27, PHQ score in 3/2019 of 18, high lability of depressive emotions, no aggression or aggressive behavior." (Tr. 1063) This record evidence does not support Eshareturi's differing opinions.

The ALJ also found that Dr. Eshareturi's opinion was not consistent by pointing out that at his most recent visit to Fort Bend Family Health Center, Andrews had reported medical improvement. "The more consistent a medical opinion is with the evidence from other medial sources and nonmedical sources in the claim, the more persuasive the medical opinion will be" (20 CFR Section 404.1520(c)(2). Dr. Eshareturi completed this questionnaire on April 10, 2019, but fails to include the improvement noted by Andrews himself during his last visit to Fort Bend Family Health Center on March, 21, 2019, rendering the opinion inconsistent with previous records.

An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *See Martinez v. Cater,* 64 F.3d 172, (5th Cir. 1995). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). *See also Aleman v. Saul*, 2021 WL 966075 (S.D.Tex., 2021). Because the ALJ sufficiently used the factors outlined in 20 CFR Section 404.1520(b)(2) to explain why he found Dr. Eshareturi's opinion unpersuasive, and correctly excluded this evidence from his RFC calculation, there is sufficient evidence to support the ALJ's RFC determination, and Andrews' third claim fails.

Andrews' first claim, related to the ALJ's finding of transferable skills using the testimony of the vocational expert, also fails. Andrews points out that the vocational expert never testified that Plaintiff acquired "attendant skills" but that the "attendant job has transferable skills." (Dkt. 17 at 6.) Andrews maintains that the vocational expert's failure to describe the skills itself is

12

harmful error insofar as if he does not have transferable skills, he would be unable to do light work, and would be "disabled" as a matter of law. *Id.* However, it is clear from the record that the vocational expert implied that the plaintiff had transferable attendant skills as a result of his past occupation as an attendant. Plaintiff's failure to cross-examine the expert on this subject supports the conclusion that this fact was understood by all the parties.

At the social security hearing held before Administrative Law Judge David J. Herbert on April 30, 2019, Andrews testified to his prior work experience as an air conditioning unit assembler, a personal care attendant, and a forklift operator. (Tr. 77-78). The following testimony clearly demonstrates the vocational expert's identification of transferable skills, and their hypothetical application to other occupations:

> ALJ: In your view, would the claimant likely have acquired any transferrable skills from past work?"
>
> VE: To a certain extent judge. The forklift operator is fairly unique and not transferable. The air conditioning assembly was very brief; 90 days at best. I would not transfer from that occupation. But the attendant job does have transferable skills (Tr. 79-80)
>
> ALJ: Would there be any jobs available in the regional or national economy for this person, utilizing the transferable skills you mentioned earlier?
>
> VE: Yes, your honor there would be.
>
> ALJ: Could you give me some examples, please?
>
> VE: Yes, sir. These would transfer to a job such as a companion, with a DOT number of 309.677-010. In terms in numbers in occurrence, judge, in the five-county Houston area 1,200 workers; nationally, 215,000. A second example would be a blind aide. DOT number 359.573-010. 820 workers, Houston; 185,000, national economy. Or a play room attendant. DOT number 359.677-026, with 650 workers, Houston; 110,000, national economy. These are all light, SVP 3 occupations, judge. (Tr. 81)

13

After the ALJ's examination of the vocational expert, Andrews' attorney questioned the expert about his testimony. (Tr. 83-89). Andrews' attorney asked the vocational expert about how a blind aide and playroom attendant could only have occasional interaction with the public, the maximum number of days that he could be absent from the job before he was terminated, and the percentage of time that he would have to be on task during the eight-hour workday in order to maintain employment (Tr. 84, 87-88). Andrews' attorney did not ask the vocational expert to clarify the exact transferable skills obtained by Plaintiff. Because Andrews did not cross-examine the vocational expert on this issue during his hearing or offer contradictory evidence at any time, the plaintiff cannot now argue that the issue is significant enough to warrant harmful error. *See Carey v. Apfel,* 230 F.3d 131, 146-147 (5th Cir. 2000) (holding that claimants cannot scan the record for potential conflicts then label that conflict as reversible error when the conflict was not deemed sufficient to merit adversarial development by the claimant at the hearing). Moreover, even if this court did remand this case based on the above issue, the ALJ would merely clarify that he based his decision on the "attendant skills" implied by the vocational expert, and the same decision would result. As the issue is not outcome-determinative, Andrews' first claim also fails.

## VI.     Conclusion and Order

Based on the foregoing, and the conclusion that substantial evidence supports the ALJ's RFC determination and his disability determination, and that any error complained of was harmless, the Court

ORDERS that Plaintiff's Motion for Summary Judgment (Document No. 16) is DENIED, Defendant's Motion for Summary Judgment (Document No. 14) is GRANTED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this __30__ day of August, 2021.

*Frances H. Stacy*

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE